UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JORGE ANIBAL TORRES JR.

         Plaintiffs

-vs-

Docket Number: 3:14-cv-01063-MEM-km

**PLAINTIFF DEMAND JURY TRIAL**

MONROE COUNTY CHILDREN AND
YOUTH SERVICES.
3 Unknown Police Officer of the
STROUDSBURG POLICE DEPT.
STROUDSBURG POLICE DEPT.
CASE WORKER CYNTHIA RAMIREZ
2 UNKNOWN CASE SUPERVISOR OF
THE MONROE COUNTY CHILDREN
AND YOUTH SERVICES IN THEIR
PERSONAL AND OFFICIAL CAPACITY
         Defendants

FILED
SCRANTON

JUL 1 0 2014

PER _____
    DEPUTY CLERK

# AMENDED COMPLAINT
**PURSUANT TO 42 U.S.C. § 1983, 18 U.S.C. § 3192, 28 U.S.C. § 1331, THE UNITED STATES CONSTITUTION, AND THE EXTRADITION TREATY BETWEEN THE GOVERNMENTS OF THE UNITED STATES AND THE DOMINICAN REPUBLIC, 36 STAT. 2468; TS 550, 7 BEVANS 200.**

NOW COMES, Plaintiffs, Jorge A. Torres Jr., and file this his amended complaint as ordered by this Honorable Court to reflect plaintiff as the only plaintiff to this action and to comply with Rule 11 of the Federal Rules of Civil Procedure and PURSUANT TO 42 U.S.C. § 1983, 18 U.S.C. § 3192, 28 U.S.C. § 1331, THE UNITED STATES CONSTITUTION, AND THE EXTRADITION TREATY

BETWEEN THE GOVERNMENTS OF THE UNITED STATES AND THE DOMINICAN REPUBLIC, 36 STAT. 2468; TS 550, 7 BEVANS 200 and in support state the following:

1. At all times hereinafter mentioned, plaintiff **JORGE A. TORRES JR.**, was a resident of 309 Spicebush Drive, East Stroudsburg PA, 18301 and have legal custody of his minor children **Y.Y.T.R, N.Y.T.R., M.D.T.R. J.T.R**, issued on August 16, 2012, by the Honorable Judges Janet C. Malone, F.C.J., and the Honorable Mary Anne Scattaretico Naber, A.F.C.J., of the Family Court of New York, who **ORDERED** and **ADJUDGED, TO GRANT SOLE LEGAL & SOLE PHYSICAL CUSTODY** of the children referenced above to the plaintiff **JORGE ANIBAL TORRES JR.,** and **FURTHERMORE, ORDERED**, that Jurisdiction of the matter pertaining custody of these children shall remain in New York State until such time as the Family Court of that State make a decision to the contrary and **ORDERED** that subject children shall have visitation

2. Defendant MONROE COUNTY CHILDREN AND YOUTH SERVICES is a Local Government entity instituted under the laws of the Commonwealth of Pennsylvania.

3. Defendant 3 unknown Police officers of the Stroudsburg Police are employees of Monroe County and Acted at all times under the color of State Law, and their employment is located at 100 Day Street, East Stroudsburg, PA 18301.

4. Defendant Monroe Police Department is located at 100 Day Street, East Stroudsburg, PA 18301.

5. Defendant Cynthia Ramirez, is a case worker and original investigator of the Monroe County Children and Youth Services and at all time acted in her personal capacity and under the Color of State Law. Her address of employment is located at 730 Phillps Street Stroudsburg, PA 18360.

6. Two unknown Monroe County Employees with the following carasteristics one black

female around 5'9 and 139 pounds between the ages of 34 and 42 and one white female 5'7 148 lb within the ages of 24 and 29.

7. The jurisdiction of this Honorable Court is invoked pursuant to 42 U.S.C. § 1983 U.S.C. § 3192, 28 U.S.C. § 1331, THE UNITED STATES CONSTITUTION, AND THE EXTRADITION TREATY BETWEEN THE GOVERNMENTS OF THE UNITED STATES AND THE DOMINICAN REPUBLIC, 36 STAT. 2468; TS 550, 7 BEVANS 200.

8. Between the Month of February and May 2014 The Defendant CYNTHIA RAMIREZ started an investigation as to the Plaintiff's children after she alleges receiving an anonimous call reporting a man living alone with six (6) children, to which she started an investigation and after investigating she concluded said investigation and sent to plaintiff a letter closing the investigation and case, because she found the information to be untruthful. A few weeks later the following ensued:

9. On or about June 2, 2014, all of the defendants in the present action arrived at the Plaintiffs domicile located at 309 Spicebush Drive, East Stroudsburg, PA 18301 and under the color of State Law and WITHOUT A WRITTEN ORDER issued by a Judge of competent Jurisdiction ilegally entered and seized the petitioner's children and several documents. The petitioner demanded to see a warrant or order in front of everyone and the defendants refused to show a warrant or order, and further refused to give in writing the reasons why the Plaintiff's children were being forcibly and illegally taken from the Plaintiff's home. The Plaintiffs' demanded to know the reasons why the children were being removed as to what all of the Defendant informed the following:

a. That the Plaintiff Jorge A. Torres Jr., who is the father of these children was wanted on a warrant issued by the Interpol out of a request of the Government of El Salvador for human trafficking, sexual exploitation and other high crimes and that the Plaintiff was considered pursuant to that warrant **ARMED AND DANGEROUS.**

    b. That it was the believe of the Defendants that the Plaintiff Jorge A. Torres Jr., was not the father of these children and that they may have been kidnapped by the Plaintiff Jorge A. Torres Jr.

10. On or about June 2, 2014, the Plaintiff Jorge A. Torres Jr., after hearing the Defendants' accusations tried to show them the custody order issued by New York State to which the Plaintiff Jorge A. Torres Jr., warned the Defendants that it was a valid Judgment which shall be afforded **FULL FAITH AND CREDIT** along with the children U.S. Passport and U.S. Department of State Consular Report of Birth Abroad and the Defendant refused to hear or look at the Plaintiff's document and said that this is Pennsylvania and they can take the kids with them regardless of the documents provided by the Plaintiff, and that the plaintiff needed to proof the Judge that these kids were his. The Defendants further stated that their actions and decisions to seized his children was based on the information found on the internet about the Plaintiff's regardless if they were true or not. At that point the Plaintiff Jorge A. Torres, Jr. Asked the police that if the facts of the Interpol Warrant were true to arrest him based on that information. The Defendant 3 Police officer refused to arrest the Plaintiff citing that they had no jurisdiction to arrest the Plaintiff based on the Interpol Arrest Warrant. The Plaintiff Jorge A. Torres advised them that he was extradited from the Dominican Republic and that he was protected from being arrested based on the Interpol Information pursuant to the extradition warrant and further explained to the Police officers that the basis of those accusation were to Extort money out of him by a corrupt Judge David Amael Moran Ascencio and Prosecutors Carlos Eduardo Velasquez de la O and Smirna Salazar de Calles who fabricated a case against the Plaintiff, and that these Salvadoran Government officers have since been removed from office arrested or accused of crimes in that country which includes extortion, bribes, False U.S. Visas, drug trafficking in the tons quantities amongst others. All of the Defendants refused to hear the Plaintiff and refused to

produce any legal documents, judge order or decree authorizing them to seized the Plaintiff's children.

11. The Plaintiff Jorge A. Torres Jr., further explained to the Defendants that the plaintiff was on FEDERAL SUPERVISED RELEASE for the past two (2) and a half years and that he had six (6) months left and that his probation officers knew about his children, has visited the Plaintiff's home in New York and Pennsylvania, seen his children and at that moment the Plaintiff Jorge A. Torres Jr., contacted this Honorable Court's United States Probation Officer **JERRY DEMPSEY** who is the Supervising U.S. Probation Officer so he can explain the Defendants about the Plaintiff's children and all of the Defendants refused to communicate with this Honorable Court Probation Officer in plain disregard of the United States Probation Officer's request.

12. The Plaintiff further explained to the Defendant that his minor children **L.V. T. R. and S. R. N. T. R.** had just arrived from El Salvador and the Dominican Republic and that they were here for medical treatment, that both of them had eighter authorization from their mother, the Salvadoran Government and the Courts. The Defendants refuse to hear any information and acted in plain disregard of the Constitution of the United States, the laws or treaties. The Plaintiff lastly requested that the children where abouts be known to him or the Consulates of Canada, The Dominican Republic, and El Salvador as required by Federal Law and treaties and the Defendant refused even to inform the several consulates where the children are also citizens off in violation of the Vienna Convention on Consular assistance. At the present the Plaintiff dont know the whereabouts of his childrens which are being ilegally detained without cause and without giving the Plaintiff any information or accusations in writing so he can prepare a defense to get his children's back, this action is preventing the plaintiff's right to due process and to seek legal advise due to the fact that he dont know what kind of attorney do he needs.

13. The capritious and ilegal actions of the Defendants has caused mental anguish, emotional pains and suffering, hopelessness, loss of money of over US$ 10,000.00 in legal and other fees as he had to hire an attorney to represent him in this matter and further has damage the livelihood of the Plaintiff because of the Show created in the neighborhood.

### SYNOPSIS OF THE PLAINTIFF'S HISTORY

14. PLAINTIFF'S JORGE ANIBAL TORRES JR., HAS NEVER BEING FOUND GULTY OF ANY CRIMES WHICH RELATES TO CHILDREN EXPLOTATIONS AND HAS NO COURT REQUIREMENT TO REGISTER AS A SEX OFFENDER AND IS NOT A SEX OFFENDER. HAS NO CONVICTIONS IN THE DOMINICAN REPUBLIC HAITI, EL SALVADOR AND OR IN THE UNITED STATES AT THE STATE LEVEL, THE ONLY TWO CONVICTIONS IN THE UNITED STATES THAT THE PLAINTIFF HAS ARE A 1998 BANK FRAUD CHAGE AND A 2002 ALIEN SMUGGLING CHARGE THAT WAS RECENTLY DISPOSED ON JUNE 16, 2011 AND FOR WHICH THE PLAINTIFF IS CURRENTLY ON FEDERAL SUPERVISED RELEASE. NO COURT ORDER HAS EVER BEEN ISSUED PREVENTING THE PLAINTIFF FROM HAVING CUSTODY OR BEING AROUND HIS OWN CHILDREN OR AROUND ANY OTHER CHILDREN BECAUSE THE PLAINTIFF HAS NEVER BEING CONVICTED OR FOUND GUILTY OF ANY CRIMES INVOLVING CHILDRENS. TO THE CONTRARY PLAINTIFF HAS SOLE LEGAL AND PHYSICAL CUSTODY OF 4 FOUR OF HIS CHILDREN AND IS REQUIRED AS ONE OF HIS CONDITIONS OF SUPERVISED RELEASE TO BE RESPONSIBLE WITH HIS FAMILY.

15. On November 29, 2002, the Plaintiff Jorge A. Torres Jr., was arrested in Canada by members of the Royal Canadian Mounted Police at the request of the United States Government who requested Plaintiff's Extradition to the United States for violating 8 U.S.C. Section 1324 "Alien Smuggling" based on several episodes where Plaintiff was transporting

several Costa Rican Citizens ALL ADULTS AND NONE CHILDRENS from Canada to the United States for financial gains. After spending 18 months in prison in Canada at the request of the United States awaiting Extradition, Plaintiff filed on June 9, 2004 and was GRANTED a habeas corpus petition and was released from prison for being ilegally detained at the request of the United States. After consulting with his attorney Gaetan Bourassa, Plaintiff was advised that the Minister of Justice of Canada was not going to surrender him to the United States and that he was free to return to the Dominican Republic.

16. On or about April 21, 2006, Plaintiff sold all of his assets acumulated in Canada between 2004 and 2006 which amounted to over $900,000 dollars and returned to his other country of citizenship the Dominican Republic and while in that country returned to law school to finish law school which he started bach in the year 2000 at the Caribbean University. Plaintiff returned to the Dominican Republic along with his wife Ana Ramirez (See Marriage Certificate Attached) and three of his childrens born at that time, which were Jackelyne Torres Ramirez, Mary Anne Del Carmen Torres Ramirez and Nathaniel Yossef Torres Ramirez.

17. On or about December 4, 2008, due to differences between Plaintiff and his wife Ana Ramirez, the couple decided to separate and Plaintiff's wife returned to El Salvador with over $500,000 dollars which the Plaintiff splitted from the assets acumulated during the marriage.

18. On or about January 7, 2008 and continuing to May 25, 2009, plaintiff and his wife started receiving extorsionate calls from member of the Salvadoran Government who claimed to know that the Plaintiff was wanted in the United States based on the 2002 alien smuggling episode for which plaintiff was released in Canada on a habeas corpus and they claimed that they were going to arrest plaintiff's wife Ana Ramirez for being an accomplice if she did not pay the Sum of $400,000 dollars. Plaintiff took the treats lightly due to the fact that he did

not know that a procedural fraud can be commited against some one that was never in that country.

19. On May 25, 2009 Plaintiff's wife Ana Ramirez was arrested by members of the Salvadoran Police and Prosecutor Carlos Eduardo Velasquez de la O with a fraudulent order issued by Judge David Amael Moran Ascencio of the First Instance Tribunal of San Juan Opico, Lourdes Colon, El Salvador. At the time of arrest Plaintiff's wife was pregnant from him with their fith children LEAH VICTORIA TORRES RAMIREZ. After her arrest Prosecutor Carlos Eduardo Velasques de la O contacted personally the Plaintiff and demanded $400,000.00 dollars cash in order to free Plaintiff's wife or else he was going to filed fraudulent chrages against Plaintiff, his mother in law and his wife Ana Ramirez. Plaintiff was not able to come up the the demanded sum of money and his wife was charged. During the whole process in El Salvador, plaintiff sent to the Salvadoran Judge and Procecutor several times the total amount demanded which totaled $400,000.00 dollars, reported the extortion to the Salvadoran and Dominican Government and his wife was never released. THESE SALVADORAN GOVERNMENT OFFICERS HAVE SINCE BEEN REMOVE FROM OFFICE, CHARGED AND ACCUSED OF THE ACCUSATIONS PLAINTIFF CLAIMS SEE THE FOLLOWING LINKS:
http://www.laprensagrafica.com/el-salvador/judicial/118754-corte-aborda-caso-de-juez-de-opico-por-fraude-de-visas.html
http://www.laprensagrafica.com/el-salvador/judicial/117854-juez-colaboro-con-fraude-de-visas-eua.html
http://es.insightcrime.org/noticias-del-dia/testigo-clave-en-un-caso-de-el-salvador-dice-que-soborno-a-los-jueces
http://www.laprensagrafica.com/dos-jueces-senalados-en-caso--repollo-
http://www.elblog.com/noticias/torres-puello-niega-ser-profugo-de-la-justicia.html

http://www.elsalvador.com/mwedh/nota/nota_completa.asp?idCat=6358&idArt=4016088

http://www.elfaro.net/es/201102/noticias/3558/

20. On or about December 2009, Plaintiff finished law school and was doing an intership in his Cousin's Alejandro Puello Aquino's law firm PUELLO CONSULTING and was awaiting to be sworn as an attorney by the Supreme Court of the Dominican Republic and while waiting was authorized to practice law along with his cousin who was a registered attorney in that country.

21. On or about January 13, 2010, Plaintiif became aware of 10 american missionaries from Idaho who had recently being arrested for trying to take 33 children from Haiti to the Dominican Republic. PLAINTIFF HAD NO PRIOR KNOWLEDGE OR INVOLVEMENT WITH THESE MISSIONARIES AND HAD NO INVOLVEMENT WITH THESE CHILDREN AND FURTHERMORE DID NOT KNOW THESE MISSIONARIES. Plaintiff decided to contact their families in Idaho and after being hired by their family obtained legal representation, food, medicine and clothing for them. THAT WAS THE SOLE INVOLVEMENT WITH THESE MISSIONARIES AND THE 33 KIDS.

22. On or about January 13, 2010, the United States Government became aware of the Plaintiff help for these missionaries and decided to investigate about Plaintiff and discovered that plaintiff had a warrant for his arrest in Vermont based on the 2002 episode for which plaintiff was released on a habeas corpus in Canada. The United States Government was under the impression that Plaintiff had something to do with these missionaries and again requested Plaitiff's Extradition from the Dominican Republic., the Republic of El Salvador under pressure from the United States also requested Plaintiff Extradition from the Dominican Republic.

23. On or about March 18, 2010, plaintiff was arrested in the Dominican Republic at the request of the Republic of El Salvador and the United States of America and was brought before the

http://www.elsalvador.com/mwedh/nota/nota_completa.asp?idCat=6358&idArt=4016088

http://www.elfaro.net/es/201102/noticias/3558/

20. On or about December 2009, Plaintiff finished law school and was doing an intership in his Cousin's Alejandro Puello Aquino's law firm PUELLO CONSULTING and was awaiting to be sworn as an attorney by the Supreme Court of the Dominican Republic and while waiting was authorized to practice law along with his cousin who was a registered attorney in that country.

21. On or about January 13, 2010, Plaintiif became aware of 10 american missionaries from Idaho who had recently being arrested for trying to take 33 children from Haiti to the Dominican Republic. PLAINTIFF HAD NO PRIOR KNOWLEDGE OR INVOLVEMENT WITH THESE MISSIONARIES AND HAD NO INVOLVEMENT WITH THESE CHILDREN AND FURTHERMORE DID NOT KNOW THESE MISSIONARIES. Plaintiff decided to contact their families in Idaho and after being hired by their family obtained legal representation, food, medicine and clothing for them. THAT WAS THE SOLE INVOLVEMENT WITH THESE MISSIONARIES AND THE 33 KIDS.

22. On or about January 13, 2010, the United States Government became aware of the Plaintiff help for these missionaries and decided to investigate about Plaintiff and discovered that plaintiff had a warrant for his arrest in Vermont based on the 2002 episode for which plaintiff was released on a habeas corpus in Canada. The United States Government was under the impression that Plaintiff had something to do with these missionaries and again requested Plaitiff's Extradition from the Dominican Republic., the Republic of El Salvador under pressure from the United States also requested Plaintiff Extradition from the Dominican Republic.

23. On or about March 18, 2010, plaintiff was arrested in the Dominican Republic at the request of the Republic of El Salvador and the United States of America and was brought before the

Supreme Court of the Dominican Republic for Extradition based on the 2002 charges in the Unted States and the 2009 charges in El Salvador. At the Court hearing before the Supreme Court of that country, Plaintiff for the first time became aware of the charges of El Salvador which accused him that: **"On May 20th, 2009, plaintiff allegedly PERSONALLY IN HIS VEHICLE picked up several under age minors from Nicaragua and brought them to El Salvador for sexual explotation.** At the hearing before the Supreme Court of the Dominican Republic, Plaintiff provided irrefutable proof that Plaintiff WAS NEVER IN NICARAGUA OR EL SALVADOR DURING THE WHOLE YEAR 2009 and FURTHERMORE an investeigation ordered by Sentence Judge Delfino Parrilla Rodriguez under the reference number 3440, REF: 252-3-2010, **CONCLUDED THAT PLAINTIFF WAS NEVER IN THAT COUNTRY TO COMMIT ANY CRIMES. AND THAT IT WAS IMPOSIBLE THAT I COMMITTED THOSE CRIMES.**

24. On or about August, 2010, the Supreme Court of the Dominican Republic based on these information decided to **denied Plaintiff's Extradition to the Republic of El Salvador** and instead surrendered Plaintiff's on Extradition to the United States based on the 2002 charges againts Plaintiff for which he was already released on habeas corpus in Canada. As part of the Extradition decree and pursuant to the Extradition Treaty Between the United States and the Dominican Republic in its article IV, Plaitiff was surrendered with the assurances from the United States Government that Plaintiff **SHALL NOT BE TRIED FOR ANY CRIMES OTHER THAN FOR WHAT HE WAS SURRENDERED.**

25. On or about September 13, 2010, Plaintiff was transported to the United States and on or About June 16, 2011, **Plaintiff pleaded guilty to one count of alien smuggling based on an episode which happened on November 29, 2002, way before four (4) of Plaintiff's children were even born.** As part of the sentence in that case the Defendant was sentenced to 17 Months in Federal Prison and 3 years Supervised Release. **AND WAS NEVER**

**ORDERED TO COMPLY WITH ANY REGISTRY OF ANY KIND DUE TO THE FACT THAT PLAINTIFF HAS NEVER BEEN CONVICTED OF A CRIME OF A SEXUAL NATURE OR THE ABUSE OF CHILDREN. FURTHERMORE PLAINTIFF WAS NEVER ORDERED TO GIVE UP HIS PARENTAL RIGHTS OF HIS CHILDREN.**

26. On or about **December 7, 2011,** Plaintiff was released from Federal Prison and after a few days in Boston, MA and Burlington, VT, was directed to relocate to Yonkers, New York to reside first in a shelter managed by the Sharing Community, and later to reside with his father George Torres at 106 Locust Hill Ave, Yonkers, NY 10701.

27. Since his release from prison Plaintiff has been a law abiding citizen and has obtained Custody of his childrens ahs taken responsibility and has hired since day one an attorney in El Salvador **WILLIAM ALEXANDER RAMIREZ FLORES** in order to challenge and clear his name in the Republic of El Salvador and with the help of his attorney have filed a petition with the Supreme Court of the Republic of El Salvador which has file number 227-2014 in that court requesting pursuant to International Law the dissmissal of any proceeding against the Plaintiff in that Country. The Plaintiff mantained a legal livelihood and has not commited a crime or violation ever sinced.

28. WHEREFORE, plaintiffs demands:

    Money Damages in the amount of $5,000,000.00

    Permanent injuntion from the Defendants from harrasing, treatening, violations Plaintiff's Constitutional Rights, Restoring Plaintiff's Children's, and performing any other unlawfull acts againts Plaintiffs in the future.

    Any further relief which the court may deem appropriate.

I Jorge Anibal Torres Jr., declare under penalty of perjury pursuant to 28 U.S. Code § 1746 that the foregoing is true and correct.

Executed on this 7th Day of July, 2014.

_____
Jorge Anibal Torres Jr.  Plaintiff, *Pro Se*.

P.O. Box 830827
Ocala, FL 34483
352-433-6498
j4336498@gmail.com

## NOTICE TO THE CLERK OF THE COURT

PLEASE BE ADVISED THAT THE PLAINTIFF to this action has since moved to the State of Florida and all correspondance should be mail to the following address:

Jorge A. Torres, Jr.
PO Box 830827
Ocala, FL 34483

Phone 352-433-6498

e-mail. j4336498@gmail.com

Sincerely,

*[signature]*

Jorge A. Torres Jr. Plaintiff Pro Se.